THE STATE EX REL. THE TOWN OF STAR PRAIRIE, Respondent, vs. THE BOARD OF SUPERVISORS OF ST. CROIX COUNTY, Appellant.

*September 1 — November 15, 1892.*

(1) *Appeal: Review of order on demurrer.* (2-4) *Bridges: County aid.*

1. Under sec. 3070, R. S., an order made upon a demurrer may be reviewed upon an appeal from final judgment.

2. Under sec. 1319, S. & B. Ann. Stats., providing for county aid in building or repairing bridges, the town has the power to decide when public safety demands that a bridge be repaired or rebuilt, and to determine the general character of such repairs or such rebuilding, and to fix and determine the amount necessary to be spent for the purpose; also to determine the location, within the limits of highways, where new bridges shall be built, and the character and cost thereof; and in these respects the action of the town cannot be controverted or questioned by the county board.

3. In a proceeding by *mandamus*, after the filing of the petition under said sec. 1319, to compel the county board to appropriate one half of the cost of constructing or repairing a bridge, the county board may deny that the town has voted to construct or repair the bridge, or that it has provided for the payment of one half of the cost, or

that it has determined or estimated the cost, or that such cost so determined exceeds one fourth of one per centum of the last equalized valuation of the town; but it cannot attack as fraudulent the amount of such equalized valuation. *It seems* that the county may also allege that the bridge is not upon a public highway, or is one which the town has no authority to build or repair.

4. To entitle the town to the aid from the county in repairing a bridge, it is necessary that the town should have ascertained and fixed the cost of the repairs.

APPEAL from the Circuit Court for *St. Croix* County.

*Mandamus* to compel county board to appropriate $400 for repairing bridges in the town of Star Prairie, under the provisions of ch. 187, Laws of 1885. The petition for the writ alleged that on the 2d day of April, 1889, the electors of the town levied $400 on the taxable property of the town for rebuilding and repairing certain bridges across Apple river in said town; that said bridges were out of repair, unsafe, urgently in need of repairs, and each situated on a public highway in said town; that the total cost of such repairs will be not less than $800, which exceeds one fourth of one per centum of all the taxable property in said town by the last equalized valuation; that the town board of supervisors duly filed its petition with the county board at its regular session in 1889, which petition is set forth in full, and substantially agrees with the requirements of sec. 1319, R. S., as amended; that the county board refused to appropriate the sum requested, or any sum whatever; that such sum of $400, together with all other sums levied by the board for other county bridges, would be less than two mills on the dollar of the valuation of the taxable property of the county; and that authority had been duly given by the town to the town board to prosecute this action. Upon this petition an alternative writ of *mandamus* was issued.

The county made return to the writ in substance as follows: *First.* That the only action of the town in raising the sum of $400 was as follows, as appears by the record of

the meeting: "A motion was then made by T. Jewell, and seconded, that the town raise a tax of $400 for the purpose of rebuilding and repairing the bridges on Apple river, situated on section one (1), eleven (11), twenty-two or twenty-one (known as the 'Parent Bridge'), and thirty-one (31). The motion was carried by vote,"— and that the location of the bridge or bridges to be repaired is so indefinite and uncertain that the respondent could not act upon it. *Second.* Denying that the bridges named were dilapidated, unsafe, or in need of repair, or that the safety and convenience of the public demanded their repair; also denying that said bridges are public necessities or are situated on public highways, and alleging that no estimate of the cost of such repairs, or plans or specifications thereof of any kind, were ever made by the town or presented to the county board. *Third.* Denying that the cost of repairing said bridges will exceed one fourth of one per centum of the equalized valuation of the taxable property of the town for the year 1888. *Fourth.* Admitting that the town supervisors presented the petition to the county board for aid in the repairing of the bridge, but denying that it was legally offered on behalf of the relator, for the reason that neither the town nor the electors thereof ever authorized or directed the presentation of said petition. *Fifth.* Denying that the electors of the town ever authorized the supervisors to institute this action or any legal proceeding against the county, and alleging that the equalized valuation of the town for the year 1888 was fraudulently made at forty per cent. of the true value, and that, if made in accordance with law, one fourth of one per centum of the taxable property would be $1,347.45. *Sixth.* That Apple river, where said bridge is to be rebuilt, is a navigable stream, and that for that reason the county had no authority to grant the petition of the relator. *Seventh.* That prior to 1875 the main traveled road through the village of Star Prairie was on the section

line between sections 1 and 12, and crossed Apple river at a point where the river is only about 110 feet wide, and where a bridge may be built easily, and at about one half of the expense of building the bridge where it is at present located; that in 1875 or 1876 the town abandoned said crossing, and built the present bridge, against the wishes of a number of inhabitants of the town, about sixty rods north of the former crossing, where the water is deeper, the approaches soft and boggy, and the expense of construction double the expense at the former site. *Eighth.* That it would be inequitable and unjust to compel the county to pay any part of the cost of repairing the bridge in question, as the majority of the people of the county have no interest in the maintenance thereof, and the county board has the right to select the point where they will build the bridge.

To this return the relator demurred generally, on the ground that it stated no defense, and it also demurred separately to each alleged defense on the same ground. The demurrers were sustained, except the demurrer to that part of the return which denied that the electors of the town authorized legal proceedings to be commenced against the county board, which was overruled, and to this order due exception was taken by the county. No further return was made. The issue as to whether the town authorized the prosecution of these proceedings was tried, and found in favor of the town, whereupon judgment was rendered against the county board that the peremptory writ of *mandamus* issue directing the appropriation by the county of $400 to assist in the repairing of said bridges, and that commissioners be appointed to co-operate with the town in the work, in accordance with the provisions of law. From this judgment the county board appealed.

For the appellant there were briefs by *S. N. Hawkins,*

district attorney, and *Clapp & Macartney*, of counsel, and oral argument by *Mr. N. H. Clapp* and *Mr. Hawkins*.

For the respondent the cause was submitted on the brief of *W. F. McNally*.

WINSLOW, J.   It is objected by respondent that this court cannot consider the correctness of the rulings of the circuit court upon the demurrer, because no appeal was taken directly from the order thereon, and that the time for an appeal therefrom has expired.   The objection is not tenable, because upon appeal from final judgment the question as to the correctness of the order upon the demurrer may be reviewed.   R. S. 1878, sec. 3070; *Moritz v. Splitt*, 55 Wis. 441.

The questions presented relate to the proper construction of ch. 187, Laws of 1885, which appears as sec. 1319, S. & B. Ann. Stats.   That section, so far as material to the questions raised, is as follows: "Whenever the town board of supervisors of any town shall file its petition with the county board of supervisors of the county in which such town is situated, setting forth the fact that said town has voted to construct or repair any bridge or bridges, wholly or partly within such town, designating, as near as may be, the location of such bridge or bridges, and further stating that such town has provided for the payment of one half of the cost of such construction or repairs, and that the cost of said bridge or bridges or repairs exceeds one fourth of one per centum of all the taxable property in said town, according to the last equalized valuation, the said county board shall appropriate the other half of such cost, and cause such sum to be levied upon the taxable property of the county as will, with the amount provided by said town, be sufficient to defray the expense of erecting or repairing such bridge or bridges so petitioned for, and such money, when collected, shall be paid out on the order of the chairman of the county board and county clerk."

It is unnecessary to set forth the petition which the town supervisors filed with the county board in full. We regard it as entirely sufficient under the statute just quoted. It follows the statute very closely, and sets forth all the facts which the statute requires. The objection that the electors of the town did not authorize the presentation of the petition to the county board, we do not regard as of any force. The law in direct terms authorizes the town board to file the petition, and the town board has done so.

The important question raised by the appeal is as to how far the allegations of the petition are conclusive upon the county board; in other words, what facts may the county board take issue upon and litigate upon *mandamus* brought to compel their action upon a proper petition. This question is now for the first time fairly presented to this court. It was suggested, but not decided, in *State ex rel. Rochester v. Racine Co.* 70 Wis. 543.

The broad ground is taken by the respondent that when the proper petition is presented to the county board it becomes their duty to at once appropriate the sum called for, and that they can raise no issue of fact, *i. e.*, that the petition is conclusive. On the other hand, the appellant claims that any and all the facts stated in the petition may be controverted and litigated, and it has endeavored to raise a number of questions of fact, the following being the questions which it relies on: (1) That the town never made any estimate of cost or plans for the work; (2) that the bridges did not in fact need any repairs; (3) that the equalized valuation of the relator was falsely and fraudulently made at forty per cent. of the true valuation; (4) that Apple river is a navigable stream, and consequently the town cannot proceed to rebuild bridges across it under sec. 1319, R. S.

In discussing this subject in *State ex rel. Rochester v. Racine Co.* 70 Wis. 543, it was said by the court: "The changes made in the law since 1871 seem to furnish some ground for

the contention of the learned counsel for the relator.    See original law (sec. 115, ch. 19, R. S. 1858), as amended by ch. 13, Laws of 1866 (1 Tay. Stats. 511); ch. 126, Laws of 1879; ch. 315, Laws of 1881; and ch. 187, Laws of 1885.    The law, previous to 1885, required the county board to act upon information to be obtained by such board before the board was required to act.    But the law of 1885 changes this radically, and requires the county board to act upon a petition to be presented by the town, alleging the existence of certain facts."    It seems very apparent from the course of legislation above cited, as well as from the positive words of the statute, as finally amended and established by the act of 1885, that it was the intention of the legisla- ture to materially limit that discretionary power on the part of the county board which had always existed under the previous laws.    While we are not inclined to hold that the county board will be bound to appropriate the sum asked for upon every petition presented in proper form, whether it be true or false, we entertain no doubt but that as to certain matters of fact the decision of the town must be held to be final and conclusive.    We think that the town has the power to decide when public safety demands that a bridge be repaired or rebuilt, and to determine the gen- eral character of such repairs or rebuilding, and to fix and determine the amount necessary to be spent for the pur- pose; also to determine the location, within the limits of highways, where new bridges shall be built, and the char- acter and cost thereof.    In these respects we think clearly the action of the town is final and conclusive, and cannot be controverted or questioned by the county board.    Nor do we think that the amount of the equalized valuation of the town can be attacked as fraudulent in this entirely col- lateral proceeding.    On the other hand, it seems equally clear that the county may deny that the town has voted to construct or repair a bridge or bridges, or that it has pro-

vided for the payment of one half the cost, or that it has
determined or estimated the cost, or that such cost so de-
termined exceeds one fourth of one per centum of the last
equalized valuation of the town. It seems probable, also,
that the county may allege that the bridge or bridges are
not upon public highways, or are bridges which the town
has no authority to build or repair. These latter matters,
however, are not decided here, as the return does not fairly
raise them. There is, indeed, a general denial that the
bridges are upon highways, but in other parts of the return
they are treated substantially as being upon highways.
There is also a statement that Apple river is a navigable
river, but it does not necessarily follow from this that the
town has not authority to bridge it. If in fact it has no such
authority, the fact should be affirmatively alleged.

With these general principles in mind, it is apparent that
the circuit court was right in its ruling upon the demurrer
to the return, except in one particular. The return alleged
substantially that the town never made any estimate or
determination of the cost of the repairs. This we regard
as an essential. It is manifest that the cost must be deter-
mined by some authority before the petition is presented
to the county board, as it must be a known sum in order
that it may be possible to determine how much one half of
the cost is, and whether the town has raised its half.
Though the statute does not provide in express terms that
the town is to determine the cost, we think that is the
unmistakable meaning of the section. Here it appears by
the return that the town did nothing save to vote to raise
$400 to repair certain bridges on Apple river. They did
not determine the extent of the repairs nor make any esti-
mate or determination as to the cost thereof. So far as
this alleged action goes, the town may never have intended
to spend more than $400, and the application to the county
board may have been simply an afterthought on the part

of the supervisors.   We cannot think that such was the intention of the legislature.   We think it certain that it was intended that the town should determine the repairs to be made, ascertain and fix the expense as near as possible, raise its one half thereof, and then make its application for aid.   Such seems to have been the practice in the previous cases which have come to this court, and such seems the only reasonable and proper interpretation of the statute. We do not consider it necessary that the town should have adopted plans and specifications, but simply that it should have fixed the cost.   It follows from these views that the demurrer should have been overruled as to that part of the return which alleges that no estimate of cost was ever made by the town, and the issue arising thereon should have been tried.

*By the Court.*— Judgment reversed, and action remanded for further proceedings in accordance with law.